## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**PAUL SCOTT**        : **Case No.**   1:18-cv-4
**C/O Gerhardstein & Branch Co. LPA**  :
**441 Vine Street**       : **Judge**
**Cincinnati, OH 45202,**    :
           : **COMPLAINT AND JURY DEMAND**
     **Plaintiff,**    :
  **vs.**         :
           :
**CITY OF MT. HEALTHY, OHIO**  :
**7700 Perry Street**      :
**Cincinnati, OH 4523**    :
           :
     **Defendant.**   :

### I.  PRELIMINARY STATEMENT

1.  This is a civil rights case challenging race discrimination and retaliation against an African American police officer by the City of Mt. Healthy, Ohio. Officer Scott was discriminated against on the basis of his race after the new chief of Police, Vincent Demasi, took charge of the Mt. Healthy Police Department in January 2015. Mt. Healthy retaliated against Officer Scott after he lodged multiple complaints about the racial discrimination he was subjected to at Mt. Healthy. Officer Scott brings this action to seek an end to the discrimination and retaliation and fair compensation for working in a hostile and retaliatory work environment.

### II.  JURISDICTION

2.  Jurisdiction of this court is invoked pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343 (3) and (4).

3.  On or about July 6, 2016, Officer Scott filed a charge of employment discrimination, based on race, among other things, pursuant to Title VII, with the U.S. Equal Employment Opportunity Commission. On or about December 23, 2016, Officer Scott filed a

1

charge of retaliation, pursuant to Title VII, with the U.S. Equal Employment Opportunity Commission.  The EEOC issued a right to sue letter on both charges, which Plaintiff received after October 5, 2017.  A copy of the notices of right to sue are attached as Exhibit A.

### III.    PARTIES

4.      Plaintiff Paul Scott is a police officer with the City of Mt. Healthy Police Department.  He resides in Hamilton County, Ohio.  His race is African American.  At all times relevant to this complaint, Officer Scott was qualified to perform the duties of his position of police officer.  During all relevant times he has been an employee of the City of Mt. Healthy.  He is an employee within the meaning of Title VII and O.R.C. § 4112.01(A)(3).

5.      Defendant City of Mt. Healthy is the employer of Plaintiff and is a public employer within the meaning of Title VII and O.R.C.§ 4112.01(A)(2).

### IV.    FACTS

6.      Since the age of 17, Paul Scott has served his country, first as in the United States Army, then the reserves, and since 2005, as a police officer.  Officer Paul Scott chose to be a police officer to serve his community and support his family.

7.      Officer Scott served in the United States Army as a Military Police Officer.  After he was honorably discharged, he worked as a police officer for the Village of Lincoln Heights.

8.      Since February 2007, Officer Scott has served as a police officer for the City Mt. Healthy, patrolling the streets, enforcing the laws, investigating crimes, training officers in active shooter response, and working with the community.

9.      Officer Scott's most rewarding position was as the School Resource Officer ("SRO") for the Mt. Healthy School District.   The School District included children from neighboring jurisdictions and was comprised of a majority of African American students.  As

part of his accomplishments as an SRO, Officer Scott served as a role model and mentor to the students. In 2015, after several years as SRO, Chief Demasi removed him from his position without explanation.

**Mt. Healthy Police Department is a Racially Hostile Workplace**

10.     Officer Scott was the first full-time African American police officer in the all-white Mt. Healthy police department. He felt animosity from some of the white officers when he started. In 2007 and still today, there has been a culture in the Mt. Healthy police department of racism.

11.     At the time of his hiring, Officer Scott was aware that the prior police chief used the word "nigger" routinely in reference to suspects and citizens. While Officer Scott experienced a racially hostile police department from the beginning of his employment, he endured, hoping the culture would change. It did not.

12.     Early in Officer Scott's tenure, a now former officer, made a comment about the patrons of a nightclub in Mt. Healthy who were predominantly African American. He stated that a bomb should be made to annihilate the whole African American race. This former officer was known to call African Americans "porch monkeys."

13.     In 2008, a sergeant came up to Officer Scott and referred to another white sergeant as a "fucking nigger." In 2009, the same sergeant witnessed an officer use the word "nigger" in reference to an African American citizen of Mt. Healthy and did not discipline the officer for saying, in front of other officers and the sergeant, "All blacks are 'niggers.' I call it as I see it." The sergeant did not discipline or investigate the officer's racist remark. Officer Scott complained about the statement and lack of discipline by the sergeant to City Manager Bill Kocher. No discipline occurred.

3

14.     In April 2011, Officer Scott filed his first formal complaint of racial discrimination, harassment, hostile work environment and disparate treatment based on, in part, the two uses of the word "nigger." The City had the incidents investigated by an outside law firm.  The attorney investigator found the discriminatory remarks had been made.  However, neither the sergeant, nor the officer who referred to African Americans as "niggers" were disciplined. The City did offer diversity training in 2010 and 2011 but the discrimination continued.

15.     When Chief Demasi arrived in January 2015, the Mt. Healthy Police Department compliment of officers was made up of 16 police officers (13 white and 3 African American) and an all-white command staff of 2 sergeants and Chief Demasi.  Of the over 6,000 citizens who reside in the City of Mt. Healthy, approximately 62% are white and 33% are African American.

16.     Over Officer Scott's career Mt. Healthy has treated officers differently based on race.  Similarly situated white officers were not disciplined for the same procedure or rule violations African American officers were disciplined for.  When white officers committed worse violations than African American officers, the white officers were not disciplined. In addition, African American officers, including Officer Scott, were denied training that white officers were permitted to attend. The disparate training provided or approved by the City of Mt. Healthy was based on race.

17.     Chief Demasi has contributed to an atmosphere of racially targeted policing when he told white festival goers in May 2015 that he would target African American children for curfew violations since African American children caused the problems in Mt. Healthy.

18.     In 2015, a white officer was told he was being disciplined by his sergeant solely so the discipline of an African American officer would not look racist.

19.     In the summer of 2015, Chief Demasi instructed officers to start pulling over more white drivers and let black drivers go because their statistics showed the police were pulling over more black drivers in predominately white Mt. Healthy. At least two officers refused to use race when stopping drivers.

20.     In 2016, when an officer resigned from the department, which he referred to as a "sinking ship," he told the City that a sergeant (the same one who called a white officer a "nigger" years earlier), referred to an African American suspect as an "ape" during a briefing. The City did not investigate the sergeant.  The officer stated in his resignation email that he could no longer witness Chief Demasi discriminate and retaliate against African American police officers.  He explained that the department was infested with "hatred and retaliation."  He stated in his resignation that policing is a hard enough profession without having to fight battles "both outside as well as inside the police department . . . ."

21.     Since Chief Demasi's hiring, two other African American police officers have made complaints of racial discrimination by Chief Demasi and filed lawsuits.  Officer Scott has supported these officers' discrimination claims, including being a witness for the plaintiff in *Antwan Sparks v. City of Mt. Healthy*.

22.     At the time of this filing, the City of Mt. Healthy police department, which at one time employed four African America police officers, now employs only one African American officer in addition to Officer Scott.

**Officer Scott Complained about Race Discrimination to the City of Mt. Healthy**

23.     While Officer Scott was assigned as the SRO he did not have much interaction with Chief Demasi.

24.     In January 2016, Officer Scott returned to patrol duty and was working out of the police department again.  Almost immediately, Chief Demasi asked Officer Scott if he wanted Chief Demasi's help in applying for early retirement.  Officer Scott was affronted by the implication that Chief Demasi wanted him to leave the department.  Officer Scott, at the time, assumed Chief Demasi was proposing early retirement because he was on light duty form a job-related injury. Officer Scott declined since he was not interested in an early retirement.  Officer Scott heard from other officers that Chief Demasi's goal was to medically separate him.  The officers told Paul Scott that it appeared to them that all the minority officers were being targeted by Chief Demasi for ultimate termination.

25.     Soon after, Officer Scott noticed that he was being treated differently than the white officers. In March 2016, he filed two grievances about unfair treatment related to compensatory time and sick time.

26.      Mt. Healthy denied both of his grievances in a meeting on March 17, 2016.  At the same meeting, his supervisor gave him five ESLs or write-ups for poor performance.  Officer Scott asked for an opportunity to respond to the five reports of poor performance so he could deny the unfair and untruthful criticisms. He was denied that opportunity.

27.     Earlier in the same shift on March 17, 2016, Officer Scott had been insulted by racist remarks Chief Demasi made about building "Demasi's fence."  Chief Demasi was asking about the status of the fence that was being built to keep the people who lived in an apartment complex from cutting through the property that separates the apartment complex from Hilltop plaza, a shopping center in Mt. Healthy.  The residents of the complex were predominately African Americans.

28.     During the conversation, officers referred to a presidential candidate stating he would built a wall between the United States and Mexico to keep illegal aliens out and make Mexico pay for it.  The officers suggested they would put up a wall between Mt. Healthy and Springfield Township and get Springfield Township to pay for it.

29.     The conversation became even more offensive and racist as another officer suggested they build a moat for the people, who were predominately African American, to drop into and drown.  Someone suggested a sign be erected that warned of prosecution.  Officers said they would need to define the word prosecution, implying the African American residents were not intelligent enough to read or comprehend the sign.

30.     Officer Scott was shocked that Chief Demasi would so openly allow such racist comments at a briefing about citizens in a neighboring community.

**March 18, 2016 Complaint**

31.     On March 18, 2016, Officer Scott filed a complaint with his supervisor about the racist discussion of "Demasi's fence."  Officer Scott complained, that as an African American, he was offended by the racist tone and the depiction of African Americans from Springfield Township as unintelligent people who should be kept out of Mt. Healthy and be allowed to drown in a moat.  He complained not only of the racist statements, but the fact that Chief Demasi encouraged the conversation.

32.     On April 6, 2016, Mt. Healthy's City Manager, Bill Kocher, told Officer Scott that his complaint was serious and would not be taken lightly.  He assured Officer Scott that his complaint would be investigated by an attorney hired by Mt. Healthy.  While Mt. Healthy hired a law firm to investigate Officer Scott's claims of racism, the law firm was not instructed to

7

investigate the allegations that the "Demasi's fence" briefing was racist and offensive. Instead, Mr. Kocher asked Chief Demasi to investigate himself.

33.     Predictably, Chief Demasi found no discrimination on his part and he took great personal offense at Officer Scott complaining that Chief Demasi was racist. Furthermore, Chief Demasi disparaged Officer Scott's attitude, performance and veracity, all in an attempt to chill Officer Scott from making further complaints of discrimination.

34.     The City never informed Officer Scott of Chief Demasi's investigation. It was revealed during litigation of Antwan Sparks' case.

**March 21, 2016 Complaint**

35.     On March 21, 2016, Officer Scott filed a second complaint with the City. In this complaint Paul Scott complained that Chief Demasi bullied, harassed, and intimidated him. Officer Scott felt that Chief Demasi was waiting for Officer Scott to make a mistake so Chief Demasi could use it to punish him. He wanted the City to know he felt Chief Demasi instils fear and uses retaliation to control him. Officer Scott explained that he felt he had to walk on egg-shells in everything he did as a police officer. He worked in fear of discrimination and reprisals. This was no way to work in a job where he was willing to put his life on the line every day.

36.     On April 26, 2016, City Manager Kocher assured Officer Scott that both his complaints would be investigated by the law firm. Officer Scott expected the outside attorney's investigation to proceed much the same as the one in 2011, which took less than two months to complete.

37.     Having heard nothing in response to his two complaints, Officer Scott filed a charge of discrimination with the EEOC on July 6, 2016. Officer Scott's charge made allegations of race discrimination, the City's creation of a hostile work environment, and retaliation.

8

**Mt. Healthy Retaliated Against Officer Scott**

38.     Mt. Healthy has retaliated against Officer Scott by giving him at least six poor ESLs or write-ups, which are considered disciplinary reprimands by the officers and can be used against an officer in a performance evaluation or promotion.

39.     The City also retaliated after it learned Officer Scott had filed the EEOC charge July 6, 2016.  In response to learning about the EEOC charge, on August 1, 2016, Chief Demasi wrote a letter to the local prosecutor stating  that Officer Paul Scott had a "prior Criminal Falsification Conviction that may require disclosure under the Brady requirement."  Paul Scott was not convicted of falsification.  Chief Demasi knew that there was no criminal conviction of Paul Scott.  A search of the public records reveals no conviction of Paul Scott.  A search of law enforcement data bases would have revealed no conviction.  Nonetheless, Chief Demasi relied solely on an unsubstantiated hearsay statement in a polygraph examiner's report.  The Chief purposefully did not ask Officer Scott about the alleged conviction until a month after the letter was mailed to the prosecutor.  Officer Scott immediately explained to Chief Demasi and Bill Kocher that he was not convicted of a crime.  Despite knowing the truth, Chief Demasi's letter has not yet been rescinded.

40.     When the City responded to the EEOC charge by scrutinizing Paul Scott's employment file, seizing on a hearsay statement in the file, reporting a criminal conviction that had not occurred, not obtaining Officer Scott's response and then ignoring his response, the City irreparably tarnished Officer Scott's reputation for veracity. The City has materially adversely affected Officer Scott's ability to testify as a police officer.  Its actions chilled Officer Scott from continuing to raise claims of discrimination.  Officer Scott felt he was being retaliated against.

9

41.     The retaliation continued in December 2016 when Mt. Healthy denied Officer Scott his request for a first shift assignment despite his seniority.  He filed a grievance claiming the City's denial of first shift and placement on third shift was retaliatory.  The City denied his grievance and his claim of retaliation.

42.     On December 23, 2016, Officer Scott filed a retaliation charge with the EEOC. At the time, he wanted to end the retaliation and hostile work environment created by Mt. Healthy.  He believed the City would not take his claims seriously since the complaints he made in March 2016 still had not been investigated by the City.

43.     In January 2017, Defendant did not provide Officer Scott with his annual performance evaluation.

44.     In January 2017, Defendant unfairly moved Officer Scott's assigned shift back and forth between third shift and second shift without notice or his agreement, and required him to work ten consecutive days in a row, all of which caused him difficulty and conflict in his family responsibilities.  This was done in further retaliation for his charge of discrimination and retaliation.

45.     By June 8, 2017, Officer Scott was documenting the adverse action he was experiencing including being denied key assignments, job opportunities, officer in charge assignments, and trainings.  Defendant denied these benefits to Officer Scott while providing them to more junior officers.  Officer Scott filed a grievance complaining that Defendant acted in retaliation for Officer Scott's complaints of discrimination and retaliation.  The City did not investigate his claims of retaliation. Instead, Chief Demasi requested that the City reprimand Officer Scott for insubordination.  Chief Demasi falsely claimed that Officer Scott refused to

work his assigned shift and was watching a basketball game that someone turned on the television at the station.

46.     To this day, Officer Paul Scott continues to work in fear of continued retaliation and is reluctant to make any new claims of discrimination or retaliation to his supervisors or the City.

**The City of Mt. Healthy is Liable for Discrimination and Retaliation**

47.     Defendant City of Mt. Healthy's policies, practices, customs, and usages permitting discrimination and retaliation against African American police officers who complain of race discrimination were each a moving force behind the retaliation and discrimination of Officer Scott.  At all times relevant to this action the City's supervisory officers and officials, including Chief Demasi, have acted consistently with and pursuant to the City's policy, custom and usage permitting discrimination and retaliation against African American police officers who complain of race discrimination and support other officer's complaints of discrimination.

48.     At all times relevant to this action, Defendant's supervisory officers' actions, including Chief Demasi's, unreasonably interfered with plaintiff's work performance and created an intimidating, hostile, and offensive work environment.

49.     At all times relevant to this action, Defendant and its supervisory officers' actions, including Chief Demasi's, were materially adverse to Officer Scott.  A reasonable employee, faced with the adverse actions of the City, would have been dissuaded from making a charge of discrimination.

50.     As a direct and proximate result of Defendant's conduct, Officer Scott has suffered and will continue to suffer damages from humiliation, embarrassment, disgrace, loss of

dignity and self-worth, emotional distress, mental suffering, lost employment benefits, overtime, compensatory time, preferred shift, and the loss of his ability to be promoted.

## V.  FIRST CAUSE OF ACTION – TITLE VII –RETALIATION AND DISCRIMINATION

51.     Plaintiff incorporates and re-alleges Paragraphs 1 – 50 herein.

52.     Defendant discriminated against Plaintiff on the basis of his race, created a hostile work environment, and retaliated against Plaintiff in response to his engaging in protected activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## VI. SECOND CAUSE OF ACTION- O.R.C. § 4112.99- RACE DISCRIMINATION AND RETALIATION

53.     Plaintiff incorporates and re-alleges Paragraphs 1 – 52 herein.

54.     Defendant discriminated against Plaintiff on the basis of his race, created a hostile work environment, and retaliated and discriminated against Plaintiff because Plaintiff opposed unlawful discriminatory practice, complained of racial discrimination, supported other African American officers who made complaints of racial discrimination, made  charges of discrimination, and participated in an investigation of his and other officers' charges of discrimination in violation of Ohio Revised Code § 4112.01 *et seq,* Ohio Revised Code §§ 4112.02(A) and (I).

## VII.  THIRD CAUSE OF ACTION – 42 U.S.C. SECTION 1983 EQUAL PROTECTION AND DUE PROCESS

55.     Plaintiff incorporates and re-alleges Paragraphs 1 – 54 herein.

56.     Defendant has acted under color of law and has violated the rights secured to the Plaintiff under the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution by treating Plaintiff differently than similarly situated non-African American police officers.

## VIII. CLAIM FOR RELIEF

WHEREFORE, Plaintiff demands that the court:

    A.  Award Plaintiff equitable relief, including entering an order prohibiting Mt.

        Healthy and its supervisors and agents from further racial discrimination and

        retaliation against Plaintiff.

    B.  Award Plaintiff compensatory damages in an amount to be determined at trial.

    C.  Award Plaintiff prejudgment interest.

    D.  Award Plaintiff reasonable attorney fees and costs.

    E.  Order such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

Respectfully submitted,

/s/ Jennifer L. Branch
Jennifer L. Branch (0038893)
Trial Attorney for Plaintiff
Alphonse A. Gerhardstein (0032053)
Adam G. Gerhardstein (0091738)
Attorneys for Plaintiff
GERHARDSTEIN & BRANCH CO. LPA
441 Vine St., Suite 3400
Cincinnati, OH 45202
Phone: (513) 621-9100
Fax:    (513) 345-5543
jbranch@gbfirm.com
agerhardstein@gbfirm.com
adamgerhardstein@gbfirm.com